By the Court.—Sedgwick, Ch. J.
The rule, if it is assumed to be valid, which requires, that in an action for damages for a nuisance, which was upon the premises of the defendant, when he purchased them, it should be proved that the defendant was requested to abate the nuisance, has no application to this case. In the present case, the defendants have more than merely retained or suffered the nuisance to remain, they have used it, and so have an original independent obligation in respect of it. 1 Chitty Pl. 89, gives to the matter a general statement: “ In some, cases it necessary, and in all cases it is j’udicious, prior to the commencement of the action to require the defendant to abate the nuisance.” He does not give any opinion as to the kind of cases in which it is necessary.
The -judicial declarations on this subject were first made, when the remedies were conceived to be such as depended upon sustaining the writs of assise and quod permittat *123 in which the judgment might be for an abatement of the nuisance and damages.
In Baten’s case, 5 Co. 98, it is said, “And the reason that at the common law, assise of nuisance lay not against him who levied the nuisance, and him to whom the tenement was transferred, was because there was not found any writ of assise of nuisance in the register but which supposed that the tenant, in the assise levarerunt; and that cannot be said when the tenement is transferred to another for he did not levy the nuisance but only the other and now this statute gives (2 Weston, c. 24) a writ of assise in such cases se questus est nobis A quod B (who levied the nuisance et C) to whom the tenement is transferred levaverunt and this statute extends only to assise-of nuisance against him who made the nuisance and his alienee'.”
It is manifest, however, that the facts supposed in the writ, would have to be proved and especially, that the alienee was in reality, a wrongdoer, as to the very cause of action asserted, viz., the making of the nuisance, and not as to another, e. g., the continuance of the nuisance. This was accomplished by the request to him to abate the nuisance. If he did. not, he was legally in like case with his alienor. This is explained in Jenk. 260, case 57. “A. builds a house so that it hangs over the house of B. and is a nuisance to him. A. makes a feoffment of his house to C. and B. a feoffment of his. house to D. and the nuisance continues ; now D. cannot abate the said nuisance or have a quod permitlat for it, before he makes a request to C. to abate it, for C. is a stranger to the wrong ; it would be otherwise if A. had continued his estate, for he did the wrong.”
It is noticeable, that in this case last cited and in Baten’s case, as well as in Penruddock’s case, 3 Co. R. 205, the plaintiff had taken the land, when it was affected by the nuisance that had been made by his alienor.
In Wenzlick v. McCotter, 87 N. Y. 122, as to the necessity of a request, the court distinguishes cases, where the defendant has actually used the nuisance.
This is made a distinction in the case cited from Jenkins. *124 “If nuisances be increased after several feoffments, these increases are new nuisances and may be abated by the several feoffees without request.” This case also declares, that after the nuisance has been extinguished, in general, as it is by one person becoming the owner of both tenements, and although, upon his subsequently making several feoffments to several persons, it remains extinguished, “ air, light, gutters and reparations remain not extinguished, for they are necessary for the life of man and the support of houses.” '
It might be a first impression, that request could not be required from one of the public to whom the obligation of the defendant lies in this case, but this request is not required as a matter personal to the plaintiff. It is to be shown, before the defendant can be said to be guilty of a tort (Wenzlick v. McCotter, supra).
In the present case, the defendants have had absolute control and actual management of the thing that caused the damage. On that is grounded their obligation, ac least to use due diligence and care, that it shall not cause damage. The plaintiff has her action because the defendants were bound to use due diligence to support any part of their house, that it was likely would fall into the street. In particular it was an omission of care to suffer the casing and the sash that moved in it to get into a state when it would fall, unless prevented, without taking ordinary means to prevent its falling.
Chief Justice Holt said in Anon. (11 Mod. 8), “that every man of common right, ought so to support his own house, as that it may not be an annoyance to another man.” The obligation cannot be confined to the pwner of a ruinous house. If another succeeds to his power of control and management, or uses it, and taking the benefit assumes the obligation, each of which conditions is a ground of responsibility, such other must also be liable.
I do not believe that if any one as a tenant uses ruinous premises, he can avoid the consequence of a want of care in the use, by showing that the landlord had covenanted to *125 repair. Payne v. Rodgers (2 Henry Bl. 350), does not seem to be an authority for the proposition. In that case the owner was held to be liable for damage from the plaintiff falling into a hole in the foot pavement, owing to some plates or bars being out of order. The Chief Justice said. “I thought at the trial, that though the tenant was prima facie bound to repair and therefore liable, yet if he could show that the landlord was to repair, then that the landlord was liable.” Neither the form nor the argument of this remark implies the proposition that the tenant is not liable unless there is another proposition implied that both could not be liable, which the case against the landlord alone could not determine and is indeed not law. Justice Buller said, “ I agree that the tenant as occupier is prima facie liable to the public, whatever private agreement there may be between him and the landlord. But if he can show that the landlord is to repair, the landlord is liable for neglect to repair.” The case not being in exoneration of a tenant there is authority for no more, than that if the tenant is primarily liable, the landlord is liable if he agreed to make repairs. The two other judges said, “If we were to hold that the tenant was liable in this case, we should encourage circuity of action, as the tenant would have his remedy over against the landlord.” The meaning of this is not clear. If it be, that in avoidance of a circuity of actions, there might be encouraged an action against the landlord, this implies that, there was a right of action against the tenant and that he could recover against the landlord, which would make both liable successively. It is not clear that this can be a valid ground, for it implies that if damages for the tort were recovered against the tenant, he could recover them in an action against the landlord on the latter’s covenant to repair and this is doubtful.
It is not necessary to decide this, because, it is certainly a fact in this case, that the sash could have been kept from falling into the street, by retaining it in a safe state by cleats or nails or wooden bars, without changing any part *126 of the fixtures or making what is understood by the word repairs.
Of course when the issue regards negligence, an element of liability is that the defendants knew or were bound to know, that there was danger that the sash would fall. The finding that the defendants were negligent in failing to keep the window sash which fell out, in good and substantial repair and safe and proper condition, with other findings, and the testimony are sufficient on this point to sustain the present judgment.
Judgment affirmed, with costs.
Truax and O’Gorman, JJ., concur.